**Warren MASSEY, Sr., Plaintiff,**

v.

**TRUMP'S CASTLE HOTEL & CASINO, Defendant.**

**Civ. A. No. 92–2530.**

United States District Court, D. New Jersey.

July 30, 1993.

Bradford Reynolds, Angus E. Crane, Dickstein, Shapiro & Morin, Washington, DC, David Seliger, Greitzer and Lockes, Cherry Hill, NJ, for plaintiff.

Jack Gorny, Horn, Goldberg, Gorny, Daniels, Paarz, Plackter & Weiss, Atlantic City, NJ, for defendant.

## OPINION

GERRY, Chief Judge.

This is an action for damages arising from an employment termination allegedly based upon race in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the New Jersey Law Against Discrimination, N.J.Stat.Ann. §§ 10:5–4, 10:5–12a. Plaintiff also alleges that his termination was in breach of an implied contract between plaintiff and defendant. We have jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. The parties are presently before the court upon defendant's motion for summary judgment.[1]

## BACKGROUND

On September 12, 1984, plaintiff applied for a job with the Atlantic City Hilton. The Hilton had not yet opened but was taking applications in anticipation of opening in the spring of 1985. The Hilton never opened, however, and defendant, Trump's Castle Hotel & Casino (defendant or "Trump's Castle"), took over its operations, retaining plaintiff and other Hilton employees. Plaintiff worked as a chauffeur for Trump's Castle until 1989 when, because of his demonstrated leadership abilities and commitment to hard work, he was selected by defendant for participation in its minority professional training program, the Professional Intern Training

for Casino Hotel ("PITCH"). This program was designed to develop minority and female professionals to fill management positions as they became available. Plaintiff was the only person ever admitted into the PITCH program. These facts are not in dispute.

Plaintiff alleges he was told that he would be transferred into a management position upon successful completion of eight weeks' training in the PITCH program. He states, however, that although he received consistently excellent reviews between May 1989 and July 1990, he was never assigned a management position and was terminated on September 30, 1990. Plaintiff's Complaint at 4–5. Defendant denies that plaintiff was promised a management position and that plaintiff consistently received good reviews. Defendant's Answer at 4–5. Defendant does not, however, state that poor job performance had anything to do with plaintiff's dismissal. Rather, defendant intends to prove that plaintiff was terminated because of economic and financial considerations. Defendants Brief in Support of Motion to Dismiss, at 2.

After this action was initiated, defendant discovered that plaintiff had made misrepresentations on his employment application. Specifically, defendant alleges that plaintiff stated he left a former job with Resorts International Hotel and Casino for personal reasons when in fact he was forced to resign because of a sexual harassment claim. In addition, defendant maintains that plaintiff failed to disclose that he had been asked to resign from a former position as an Atlantic City policeman in 1968 because he had misplaced his gun.

## DISCUSSION

Defendant contends that the "after acquired" evidence of plaintiff's misrepresentations, though admittedly not the basis of its decision to discharge plaintiff, precludes plaintiff from obtaining any relief on both his

---

1. Defendant originally titled its motion as a motion to dismiss. Because both parties have submitted accompanying affidavits, depositions, and other documentary evidence and because plaintiff's brief in opposition treated the motion as one for summary judgment, we will construe the motion as one for summary judgment. *See* Fed. R.Civ.P. 12(b); *see, e.g., Gay v. Wall,* 761 F.2d

175 (4th Cir.1985); *see also United States v. Grayson,* 879 F.2d 620 (9th Cir.1989) (no notice required when court intends to construe motion to dismiss as motion for summary judgment where party has had full and fair opportunity to argue relevant issues). The court informed the parties at oral argument of our intentions in this regard and no objection has been raised.

federal and state discriminatory discharge claims and his state claim for breach of contract.[2] Defendant's argument is based on the rationale that an illegally discharged employee has suffered no injury if his/her previous misconduct, had it been known to the employer, would have resulted in his/her legal discharge. Although the majority of courts addressing the preclusive effect of such after acquired evidence support defendant's position, neither the Third Circuit, any district courts within the circuit, nor any New Jersey courts have confronted this issue. Therefore, before we can decide the merits of defendant's motion for summary judgment, we must first determine whether and to what extent the law of after acquired evidence should be applied.[3]

## I. VARYING APPROACHES TO AFTER ACQUIRED EVIDENCE

The use of after acquired evidence in employment discrimination cases has been addressed by four circuits: the Tenth, Sixth, Seventh, and Eleventh. While no court has rejected the admission of after acquired evidence, they differ over whether such evidence should preclude the entire claim or only the remedies of reinstatement and front-pay,[4] and whether any distinction must be drawn between employee misconduct in falsifying an employment application and misconduct that occurred during the plaintiff's tenure as an employee.

### A. The Tenth Circuit

The seminal case involving this issue is *Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700 (10th Cir.1988). In that case an employee brought suit against his employer under Title VII and the Age Discrimination in Employment Act, alleging that he was terminated because of age and religious discrimination. At one time, the employee, an insurance claims representative, had been reprimanded and placed on probation for falsifying between seven and nine insurance claims. He returned to work but was fired approximately six months later. The employer conceded that the plaintiff was not fired because of the falsifications, but rather because of his attitude and inability to get along with co-workers and customers. *Id.* at 702–03. Four years after the termination, while preparing for trial, the employer discovered an additional 150 falsifications. *Id.* at 703. The question before the court was whether the discovery of the additional falsifications should have any effect on the appropriate remedy. *Id.* at 703, 707 n. 3. The court determined that, because the after acquired evidence constituted a legitimate reason to fire the employee, the plaintiff had not sustained an injury and no relief was warranted. *Id.* at 708.

In reaching its decision, the court relied primarily on *Mt. Healthy City Sch. District Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), a mixed-motive case.[5] In *Mt. Healthy,* a school board had refused to rehire a teacher for two reasons: that he had revealed the substance of an internal memorandum to a radio disc-jockey

---

2. Defendant also moved for dismissal of plaintiff's Title VII claim, arguing that plaintiff failed to file a timely administrative claim. Defendant admits in his reply brief, however, that such failure will not bar plaintiff's claims unless defendant can demonstrate prejudice. Because defendant is unprepared to demonstrate prejudice but believes that it will be able to after further discovery, defendant asks that its motion be dismissed without prejudice. This request will be granted.

3. We note that in response to the court's request for supplemental briefing on the state law issues, plaintiff made additional arguments regarding the federal standard. We find such arguments unresponsive to our narrow request and we choose not to consider them. The court has, however, independently considered some of the authorities mentioned in plaintiff's supplemental brief.

4. Front-pay represents damages for wages lost either where plaintiff is awarded reinstatement but for one reason or another the position is unavailable for some time, or where the plaintiff has acquired another job at lesser pay. Liable defendants may be required to make up the difference in pay between the former and present positions unless they can show that plaintiff has not fully performed her duty to mitigate damages.

5. "Mixed-motive" cases involve situations where the employer's decision to fire or not to hire the plaintiff is based on both discriminatory and legitimate purposes.

who subsequently broadcasted that information, and that he had made obscene gestures to female students. Following a bench trial, the district court held that the first reason violated the First Amendment and ordered the teacher's reinstatement with back-pay. The Supreme Court reversed. It held that the school board could not be held liable, even if it had violated First Amendment guarantees, if it proved that it would not have rehired the teacher solely because of the obscene gestures. The Court stated that the constitutional principal was "sufficiently vindicated if [the] employee is placed in no worse a position than if he had not engaged in the [protected] conduct." *Id.* at 285–86, 97 S.Ct. at 575.

The Tenth Circuit stressed the Supreme Court's reasoning in *Mt. Healthy* that an employee's engagement in protected conduct or membership in a protected class cannot preclude the employer from assessing the employee's performance and firing him on the basis of that record, and that employers must be allowed to show that the same employment decision would have been made absent those illegitimate motives. *Summers*, 864 F.2d at 706 (citing *Mt. Healthy*, 429 U.S. at 285–86, 97 S.Ct. at 575). The court also cited a Fourth Circuit opinion for the proposition that *Mt. Healthy* directed district courts to "make [an] after-the-fact rationale" regarding the circumstances that would have existed absent the discriminatory conduct. *Id.* at 707 (citing *Smallwood v. United Air Lines, Inc.*, 728 F.2d 614, 623 (4th Cir.), *cert. denied*, 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984)). The Tenth Circuit stated, however, that it was not concerned with the actual cause of dismissal, but rather with the "appropriate remedy." *Id.* at 707 n. 3. It held that the after acquired evidence,

though not the "cause" of the discharge, was relevant to the plaintiff's claim of "injury" and precluded any relief. *Id.* at 708.[6] It analogized the case to the hypothetical situation wherein a company fired a doctor "because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a 'doctor' ... the masquerading doctor would be entitled to no relief." *Id.* at 708. The court concluded that the plaintiff had no injury because he would have been legitimately fired if the employer knew of the falsifications, though, in fact, he had been fired for illegitimate reasons.[7] *Id.* Thus, the fact that he had been discriminated against was irrelevant.

Some courts applying this rule have stated that the civil rights statutes were not meant to protect employees who have committed misconduct of a nature that, had their employers known of it, the employer would have fired them. *O'Driscoll v. Hercules, Inc.*, 745 F.Supp. 656, 660–61 (D.Utah 1990). The *Summers* methodology has been followed in other circuits in the following cases: *Rich v. Westland Printers, Inc.*, 1993 WL 220453 (D.Md. June 9, 1993); *Kravit v. Delta Airlines, Inc.*, 1992 WL 390236 (E.D.N.Y. Dec. 4, 1992); *Redd v. Fisher Controls*, 814 F.Supp. 547 (W.D.Tex.1992); *O'Day v. McDonnell Douglas Helicopter Co.*, 784 F.Supp. 1466 (D.Ariz.1992); *Sweeney v. U–Haul Co. of Chicago Metroplex*, 1991 WL 1707 (N.D.Ill.1991).

### B. The Sixth Circuit

The Sixth Circuit has adopted the Tenth Circuit's approach, *see Milligan–Jensen v. Michigan Technological Univ.*, 975 F.2d 302, 305 (6th Cir.1992) (if employer shows that plaintiff would have been fired had after

---

6. This language—on the one hand focusing on the remedy and on the other stating there was no injury—is confusing. The former would imply that each available remedy should be examined to see if it is appropriate considering the misconduct. The latter suggests, however, that the action would be barred regardless of the remedy sought because there was no injury. At the time of *Summers*, only front-pay, back-pay, and reinstatement were available under Title VII. *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir.1977), *overruled on other grounds by Holliday v. Ketchum, MacLeod & Grove, Inc.*, 584

F.2d 1221 (3d Cir.1978). The ADEA, however, allowed for the doubling of lost wages where the employer's conduct was egregious. The *Summers* court's failure to address the availability of such punitive damages makes clear that *all* remedies are barred under *Summers*.

7. The court stated that there was no meaningful distinction between determining whether a plaintiff would have been hired or fired. *Id.* at 707 n. 3.

acquired evidence been known to employer during employee's tenure, actual discrimination is irrelevant), but has modified it for cases involving resume fraud. In *Johnson v. Honeywell Info. Sys., Inc.*, 955 F.2d 409 (6th Cir.1992), the court formulated a fraud type analysis for cases involving misrepresentations in a resume or employment application, as differentiated from cases involving on the job misconduct. It held that the employer would be entitled to summary judgment only if the "misrepresentation or omission was material, directly related to measuring a candidate for employment, and was relied upon by the employer in making the hiring decision." *Id.* at 414 (citing *Churchman v. Pinkerton's, Inc.*, 756 F.Supp. 515, 520 (D.Kan. 1991)). The court deemed these requirements necessary to prevent employers from "combing a discharged employee's record for evidence of any and all misrepresentations, no matter how minor or trivial, in an effort to avoid legal responsibility for an otherwise illegal discharge." *Id.*

This fraud analysis has been applied in other circuits as well. *See, e.g., Agbor v. Mountain Fuel Supply Co.*, 810 F.Supp. 1247 (D.Utah 1993); *Churchman v. Pinkerton's, Inc.*, 756 F.Supp. 515, 520 (D.Kan.1991); *compare Wallace v. Dunn Construction Co.*, 968 F.2d 1174, 1187 (11th Cir.1992) (Godbold, J., dissenting) (plaintiffs having committed fraud in application, as distinguished from employee properly hired who commits misconduct after hire, have no standing under Title VII).

### C. The Seventh Circuit

The Seventh Circuit has rejected the Sixth Circuit's standard for resume or application fraud. *Washington v. Lake County, Illinois*, 969 F.2d 250 (7th Cir.1992), involved a suit under Title VII, and 42 U.S.C. §§ 1981 & 1983 in which the trial court had granted defendant summary judgment based on after acquired evidence that the plaintiff had lied on his application by indicating he had no criminal convictions. *Id.* at 251. In affirming that judgment, the Seventh Circuit held that, regardless of whether the after ac-

quired evidence involved application fraud or on the job misconduct, such evidence barred an employment discrimination claim only if the employer demonstrates that it would have made the decision to *fire* the plaintiff had it known of the misconduct. *Id.* at 255. The court required this potentially more stringent standard because "there are many situations ... in which an employer would not discharge an employee if it subsequently discovered resume fraud, although the employee would not have been hired absent that resume fraud." *Id.* at 256 n. 5.

While acknowledging the equitable appeal of denying a plaintiff any relief when that plaintiff was hired, in part, based upon his own fraudulent conduct, the court found the Sixth Circuit's approach misguided. *Id.* at 256. The court noted that, in mixed-motive cases, the Supreme Court focused on whether the *employment decision at issue* would have been made. *Id.* It reasoned that to focus on whether the plaintiff would have been hired would unjustifiably depart from that standard and, by concentrating on job entitlement, would import " 'property right' concepts into employment discrimination law." *Id.* The court stated that " 'property right[s]' ... [are] not a requirement for showing injury in a federal discrimination claim." *Id.* Finding that the criminal convictions, their concealment, and defendant's affidavits sufficiently established as a matter of law that the employer would have fired the plaintiff, the court affirmed the lower court's grant of summary judgment. *Id.* at 256–57.

The court also noted that in an earlier case, it had implied that a plaintiff proving discrimination would be entitled to back-pay between the time of discharge and the time after acquired evidence of fraud or other misconduct was discovered.[8] *Id.* at 253 n. 2 (citing *Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1319 n. 2 (7th Cir.1989)); *see also Kristufek v. Hussmann Foodserv. Co.*, 985 F.2d 364, 371 (7th Cir.1993) (back-pay award reduced to amount lost between time of discharge and discovery of misconduct). The court refused to consider this issue, however,

---

**8.** This approach is currently employed by the National Labor Relations Board. *See John Cu-*

*neo, Inc.*, 298 N.L.R.B. No. 125, slip op. (June 25, 1990).

because it was not advanced by the plaintiff. *Washington,* 969 F.2d at 253 n. 2.[9]

### D. *The Eleventh Circuit*

The Eleventh Circuit, however, has expressly rejected both the Tenth Circuit's analysis that illegally terminated employees guilty of sufficient misconduct can claim no injury and the Seventh Circuit's limitation on back-pay. In *Wallace v. Dunn Construction Co.,* 968 F.2d 1174 (11th Cir.1992), the court held that where after acquired evidence provides the employer with a legitimate reason to fire the employee, reinstatement, front-pay, and injunctive relief are unavailable, but back-pay—from the time of discharge to the time of judgment—as well as attorney's fees and nominal damages remain available. *Id.* at 1184.

In *Wallace,* the plaintiff brought suit under Title VII and the Equal Pay Act alleging retaliatory discharge and sexual discrimination. While preparing for trial, the defendant became aware that plaintiff had lied on her application in stating that she had no criminal convictions when, in fact, she had a prior conviction for drug possession. While agreeing with the Tenth Circuit that reinstatement and front pay would be inappropriate in such circumstances, the court refused to preclude all back-pay. The court noted that the purpose of Title VII is to " 'achieve equality of employment opportunity' by giving employers incentives to 'self-examine and self-evaluate their employment practices and to endeavor to eliminate, so far as possible,' " employment discrimination. *Id.* at 1180 (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417–18, 95 S.Ct. 2362, 2371–72, 45 L.Ed.2d 280 (1975)). The court reasoned that the denial of all relief because of after acquired evidence would be antithetical to the purposes of Title VII because it would not encourage employers to eliminate discrimination, but instead permit employers to "devote less resources to preventing discrimi-

nation" because they would know that they could escape all liability by after-the-fact findings of flaws in the employee's background. *Id.* It hypothesized that employers inclined to discriminate would set low standards for legitimate termination, hire members of protected classes knowing that they violated those standards, and then discriminate against that employee until he complains. Then they could discharge him, "discover" the violations, and move for dismissal. *Id.* at 1180–81.

The court stated further that the mixed-motive cases decided by the Supreme Court required district courts to place an employee in no worse a position than if he had not been a member of the protected class. *Id.* at 1179 (citing *Mt. Healthy* ). The court reasoned that where the after acquired evidence is sufficient to justify firing an employee, though the employee was actually fired for illegal reasons, courts must strike a balance between preserving the employer's lawful prerogatives to fire employees and the statutory requirement to make persons whole for injuries suffered from illegal employment decisions. *Id.* at 1181. The court effectuated this balance by disallowing awards of reinstatement or front-pay if the employer proved by a preponderance of the evidence that the employee would have been fired for legitimate reasons, but award back-pay for the time between the discharge and judgment in the employee's favor. *Id.* at 1181–82 & n. 11.

Regarding the calculation of back-pay, the court rejected the Seventh Circuit's alternative approach, under which the court stops calculating back-pay at the time the after acquired evidence is discovered, because that formulation overlooked the fact that the evidence would not have been discovered had the employer not discriminated against the employee. In the court's opinion, the Seventh Circuit's approach was contrary to *Mt. Healthy* in that it did not place members of

---

9. In light of the court's reasoning, which seems to allow after acquired evidence to bar only certain remedies rather than the claim itself, it is unclear why the plaintiff was not allowed to proceed under his section 1983 claim, which allowed for other remedies such as punitive damages. It appears from the opinion that summary judgment was entered on all claims. *Id.* at 251. Perhaps the plaintiff did not seek such remedies or the court had other reasons for barring that claim. Thus it is not entirely clear what remedies are barred by after acquired evidence in the Seventh Circuit.

protected classes in the same position they would have been in had they not been members of the class. Moreover, it provided a windfall to the employer. *Id.* at 1182. The court stated that if the employer could prove that the information would have been discovered at a certain date even had the litigation not occurred, the back-pay could be limited to the date of the inevitable discovery. Thus, for example, in cases involving an alleged illegal failure to hire a job applicant, if the defendant could prove that the misrepresentations would have surfaced had it continued with its normal application procedures and that the plaintiff would not have been hired based upon that discovery, then all back-pay would ·be precluded. *Id.*

Finally, the court noted that, as a prevailing party, the employee would be entitled to some attorney's fees but that the after acquired evidence may require some reduction in this amount under traditional attorney's fees principles. *Id.* at 1183 (citing *Texas Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789–90, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989); *Hensley v. Eckerhart*, 461 U.S. 424, 433–40, 103 S.Ct. 1933, 1939–43, 76 L.Ed.2d 40 (1983)).

Only one court outside the Eleventh Circuit has applied this analysis to date. *See Boyd v. Rubbermaid Commercial Prods., Inc.*, 1992 WL 404398 (W.D.Va.1992) (refusing to apply *Summers* to bar award under Equal Pay Act).

Thus, courts have taken four basic approaches regarding after acquired evidence in employment discrimination suits. Courts following the Tenth Circuit's decision in *Summers* hold that there is no injury if the after acquired evidence is sufficient to show that the employee would not have been hired or would have been fired had the employer known of the negative evidence. Courts applying the approach delineated by the Sixth Circuit in *Honeywell* also find no injury to those who would not have been hired or would have been fired but require a fraud-like analysis for cases involving resume or application misrepresentations. The Seventh Circuit rejects the reasoning of both the Tenth and Sixth Circuits and allows back-pay from the time of discharge until the time the misrepresentations are discovered and requires employers to show that the employee would have been fired, even in cases involving resume and application fraud. Finally, the Eleventh Circuit makes clear that after acquired evidence only impacts on appropriate remedies, not whether there has been an injury. Thus, all remedies other than front-pay and reinstatement are available. Under this approach, back-pay is available from the time of discharge to the time of judgment unless the employer can prove that discovery of the misconduct or misrepresentation would have occurred at an earlier date absent the discrimination.

## II. THE STANDARD FOR THIS CASE

### A. The Federal Claims

 This court holds that an employee's federal discriminatory discharge claim will not be barred by after acquired evidence of that employee's misconduct. Such evidence, however, may preclude the award of front-pay and reinstatement.

It is problematic at best to say that there has been no injury in the face of proven illegal conduct. The after acquired evidence cases are not equivalent to the mixed-motive cases upon which they rely. In a mixed-motive case, the employer had more than one reason for its employment decision, and that decision would not have been changed if the illegal motives were removed. In the after acquired evidence cases, however, the employment decision was based solely on illegal grounds. Absent those illegal motives, the employee would still be employed. Thus, an illegal discharge causes an injury regardless of an employee's previous misconduct, and that injury must be subject to some redress.[10]

---

**10.** Defendant contends that to award any damages will encourage employees to lie on employment applications. We disagree. Whatever rule we fashion today will have no impact on an employee's truthfulness on employment applica-

tions. Employees with questionable backgrounds lie on their applications in order to acquire employment. This is a powerful incentive and is best combatted by informing employees that lying may lead to dismissal, adequately

We also note that Title VII was amended in 1991 to make clear that a violation of the act occurs when a discriminatory reason was a "motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.S. § 2000e–2 (Law.Co-op.Supp.1992). Thus, Congress has clarified its intention to make discriminatory conduct illegal even in mixed-motive cases. We were not asked nor do we reach the question of whether this amendment should be applied retroactively. We note the amendment only for its persuasive support for our conclusion that an injury does occur when an employment decision is based upon improper motives notwithstanding that other legitimate rationale surfaced after the fact.

Our holding is buttressed further by our mandate to effectuate the purpose of Title VII, which is to make an injured plaintiff whole and to encourage employers to rid the workplace of discriminatory conduct. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417–18, 95 S.Ct. 2362, 2371–72, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). Precluding all recovery based upon reasons unrelated to the discriminatory conduct flies in the face of these purposes. In addition the concerns raised by the Eleventh Circuit regarding sandbagging by the employer, the use of after acquired evidence to bar a discrimination claim in its entirety could cause employees who did something wrong in the past to quietly endure discriminatory treatment rather than complain, regardless of how long ago the misconduct occurred or its triviality. On the other hand, to require employers to reinstate or provide front-pay to an employee today that they can now fire legitimately tomorrow would be nonsensical.

Accordingly, we reject the Tenth Circuit's approach expressed in *Summers*. In our view, it fails to adequately distinguish between liability and relief. As explained above, employees subjected to discriminatory discharge have indeed suffered an injury regardless of whether other legitimate reasons for discharge might have existed.

■ The Sixth Circuit's approach in *Honeywell*, which carved a special rule for cases involving misrepresentations on applications and resumes, is also misguided. Although it could be argued that the *Honeywell* formulation (requiring proof that the misrepresentations were material and relied upon by the employer) adequately protects against the dangers foreseen by the Eleventh Circuit (that employers may lower standards and manufacture violations), this court agrees with the Seventh Circuit that this improperly imputes property rights concepts into employment discrimination litigation. The inquiry in employment discrimination cases must focus on whether the employer would have made the same employment decision, not whether the employee had improperly obtained his position. Where an employee who would not have been hired had she told the truth on her application, but who would not have been fired had the truth been revealed *after* she was hired, is discharged for discriminatory reasons, she is subject to injury that she would not have suffered but for the employer's discriminatory conduct. Any concern we may have in awarding damages to employees who have acquired their jobs improperly does not outweigh the plaintiff's statutory right to recover and is adequately addressed by precluding front-pay and reinstatement. *See Wallace*, 968 F.2d at 1181 n. 10. There is nothing in the statute itself to support a requirement that the job had been acquired honestly. Moreover, if the employer has somehow been damaged by the plaintiff's misrepresentations or misconduct on the job, it may seek its own damages where appropriate.

■ Further, we agree with the Eleventh Circuit that back-pay should be available until the time of judgment, rather than the time of discovery as suggested by the Seventh Circuit. The fact that the misconduct was discovered only as a byproduct of the em-

checking employees' backgrounds, and dismissing those whom the employer finds made material misrepresentations. We find it preposterous that an employee would refrain from lying be-

cause she anticipates that she may be illegally discriminated against later and wants to preserve her right to recover damages.

ployer's illegal actions cannot be minimized or overlooked.

■■ For all of the above reasons, we hold that the following legal standard will be applied in all federal employment discrimination cases before this court involving after acquired evidence of employee misconduct. Defendants may use after acquired evidence only to prove that the defendant would have made the same employment decision at issue in the action. Whether the defendant would not have hired the employee initially will not be relevant in cases involving alleged illegal discharges. If the defendant proves that it would have made the same decision, the remedies of front-pay and reinstatement will be barred. All other remedies, however, will remain available to the plaintiff.[11] If back-pay is awarded, it will be measured from the date of the injury to the date of the judgment unless the employer can prove that the information would have inevitably come to light independent of the employer's discriminatory conduct.

### B. The State Claims

In addition to his federal claims, plaintiff sues under the New Jersey anti-discrimination statutes and for breach of contract. Specifically, he alleges violations of N.J.Stat. Ann. § 10:5–4, which protects the opportunity to obtain employment without discrimination because of race, and § 10:5–12a, which makes illegal the discharge of or refusal to hire an employee on the basis of race. Plaintiff's contract claim is based upon an alleged implied contract arising from defendant's offer and plaintiff's acceptance of a position in the PITCH program. Plaintiff contends that he successfully performed and completed all requirements of the program but was not offered a management position as promised.

In addressing the state claims, we must determine whether and how the New Jersey

Supreme Court would apply the doctrine of after acquired evidence. *See Doty v. Sewell*, 908 F.2d 1053 (1st Cir.1990) (*Erie* doctrine applies to pendant state claims). Defendant contends that New Jersey courts would dismiss both the employment discrimination and the contract claims on the basis of the after acquired evidence discussed above.

### 1. Employment Discrimination

■ Neither the parties nor this court have located any New Jersey cases discussing the use of after acquired evidence in employment discrimination cases. In employment discrimination cases, New Jersey courts look to federal Title VII law for guidance, but are not bound by such law and adopt it only if they find it useful and fair. *See Grigoletti v. Ortho Pharmaceutical Corp.*, 118 N.J. 89, 570 A.2d 903 (1990); *Peper v. Princeton Univ. Bd. of Trustees*, 77 N.J. 55, 389 A.2d 465 (1978). We are faced with determining how the New Jersey Supreme Court would respond to the split in the federal case law described above.

■ Defendant argues that concern for honesty in the New Jersey gambling industry, as evidenced by the many regulations regarding the character of casino employees, would cause New Jersey courts to be less inclined to allow any recovery to those industry employees who lied on their employment applications. We find this argument unpersuasive. This court is not convinced that New Jersey courts would find that the Legislature's concerns regarding the state gambling industry overrides its interest in eradicating employment discrimination, as evidenced in the anti-discrimination statutes.

Absent evidence to the contrary, we believe that the New Jersey Supreme Court would recognize the same deficiencies in the Tenth and Sixth Circuits' rationale noted earlier in this opinion and fashion a standard

---

11. For example, in the case before the court, other remedies that may be available to plaintiff under Title VII, such as back-pay, or under 42 U.S.C. § 1981, such as compensatory and punitive damages, remain available.

Remedies under Title VII and 42 U.S.C. § 1981, though related, are "separate, distinct and independent." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44

L.Ed.2d 295 (1975). Compensatory and punitive damages are available under section 1981. *See Mahone v. Waddle*, 564 F.2d 1018 (3d Cir.1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727 (9th Cir.1986); *Gonby v. Pennsylvania Elec. Co.*, 631 F.Supp. 782 (W.D.Pa.1985); *Collier v. Philadelphia Gas Works*, 441 F.Supp. 1208 (E.D.Pa.1977).

identical to the one we have adopted today, which combines the most persuasive aspects of the Seventh and Eleventh Circuit opinions. This standard effectuates a logical and fair balance of employer and employee interests—a balance New Jersey courts would be equally interested in maintaining. Therefore, we will apply the identical standard for the use of after acquired evidence to the federal and state claims based upon discriminatory discharge.

### 2. Contract

■ Defendant argues that New Jersey courts would allow after acquired evidence to bar contract claims where the contract was entered into in reliance on material representations by the plaintiff.[12] New Jersey courts recognize that, under ordinary contract principals, transactions entered into in reliance upon material misrepresentations are voidable. *See Konsuvo v. Netzke*, 91 N.J.Super. 353, 367, 220 A.2d 424 (Ch.Div.1966); *see also Jewish Center of Sussex County v. Whale*, 86 N.J. 619, 626, 432 A.2d 521 (1981) (contract entered into based upon material misrepresentation is rescindable).

■ Defendant argues that, assuming there was an implied contract involving the PITCH program, it was voidable because of plaintiff's material misrepresentations. Defendant maintains that it is therefore under no obligation to perform any obligations it may have had under the alleged contract. The Restatement (Second) of Contracts supports defendant's position. It states that a party who has power to disaffirm a contract cannot be held in breach of that contract if he fails to perform, "even if he is ignorant of his power of avoidance and believes that his refusal or failure is a breach ... the legal consequences of a party's refusal or failure to perform are not affected by the fact that he is ignorant of some justification or excuse for

his refusal." *Restatement (Second) of Contracts* § 385 cmt. a (1982). Although we have found no New Jersey cases citing this provision, a comparable provision has been applied in New Jersey. *See Allstate Redevelopment Corp. v. Summit Assocs., Inc.*, 206 N.J.Super. 318, 324, 502 A.2d 1137 (App.Div. 1985) (applying § 225 which excuses performance of contractual duty when condition precedent does not occur even if non-performer is ignorant of the non-occurrence). Accordingly, we hold that, under New Jersey law, an employer may not be held liable for breach of an employment contract, if it can show that it had the power to void the contract due to reliance on material misrepresentations, even where the employer was unaware of that power when the breach occurred. Unlike the policies underlying the anti-discrimination statutes, there is no competing policy under ordinary contract principals to discourage an employer's breach of contract.

We now apply the above standards to the present motion for summary judgment.

## III. APPLICATION TO THE FEDERAL AND STATE DISCRIMINATORY DISCHARGE CLAIMS

A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat a properly supported summary judgment motion, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). An issue is "genuine" only if the evidence is such that a reasonable jury could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106

---

12. Defendant also argues that plaintiff's contractual claim should be barred under general estoppel theories. This argument is inapt because defendant cannot show that it *detrimentally* relied on the misrepresentations, a crucial element of equitable estoppel. *See O'Neill v. Washington Twp.*, 193 N.J.Super. 481, 487, 475 A.2d 55 (App. Div.1984). Moreover, the purpose of the doctrine is to place the burden of loss on the party who could have avoided the injury. *See Foley*

*Mach. Co. v. Amland Contractors, Inc.*, 209 N.J.Super. 70, 75, 506 A.2d 1263 (App.Div.1986). In this case, assuming injury to the employer, each party could have avoided the injury to the other. Plaintiff by telling the truth and defendant by refraining from discriminatory conduct. If the discharge was illegal, defendant's wrongful conduct precludes it from seeking equitable relief.

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Equimark Commercial Finance Co. v. C.I.T.,* 812 F.2d 141, 144 (3d Cir.1987). All reasonable inferences to be drawn from the facts "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Defendant contends that it would have fired plaintiff had it known that plaintiff had been previously fired from the Atlantic City Police Department for losing his gun and had involuntarily resigned from his prior position at Resorts International for sexual harassment.[13] Defendant asserts that there are two independent grounds upon which it would have fired plaintiff based on these revelations: for the conduct itself and for lying on his application to conceal the conduct. *Compare Milligan–Jensen v. Michigan Technological Univ.,* 975 F.2d 302, 303 n. 1 (6th Cir.1992) (employer may establish proof it would have fired plaintiff either based on true facts underlying misrepresentation or because of falsehood itself); *Baab v. AMR Servs. Corp.,* 811 F.Supp. 1246 (N.D.Ohio 1993) (same).

### A. The Conduct Itself

#### 1. Discharge from Police Department

■ Defendant has not submitted any evidence that plaintiff would have been fired had defendant known that plaintiff had been terminated from the police department for losing his gun. The only evidence submitted is a certification from its vice president, Robert Pickus, Esquire, which states only that evidence of such irresponsibility would have precluded defendant's recruitment of plaintiff for the PITCH program. *See id.,* Ex. F. It does not state that plaintiff would have been fired had defendant learned of the incident. Defendant has not met its burden to demonstrate that it would have legitimately fired plaintiff for this alleged misconduct and, therefore, we cannot on this basis enter summary judgment.

**13.** Defendant primarily argues that it would not have *hired* plaintiff. Under the standard we have adopted today, however, that argument is irrele-

#### 2. Involuntary Discharge for Sexual Harassment

■ Defendant has also failed to meet its burden to show as a matter of law that it would have fired plaintiff had it found out about his involuntary discharge based on sexual harassment. While this information may have been sufficient grounds to refuse to hire plaintiff, it is less clear that discovery of the former employer's action five years after the fact would have resulted in the dismissal of an employee who had been performing well enough to be singled out as the first participant in defendant's PITCH program.

■ In support of its contention that it would have fired plaintiff, defendant submits Robert Pickus's certification and its handbook on company policies and procedures. The certification, however, states only that plaintiff would have been discharged because the company has a policy to discharge employees for *falsifying records;* it does not state that he would have been fired for the underlying misconduct. Its only reference to the underlying conduct is that evidence of such conduct would have caused defendant not to select plaintiff for the PITCH program. *See* Defendant's Brief, Ex. F. This is insufficient to demonstrate that plaintiff would have been fired.

■ The handbook is similarly insufficient. It states that, following an investigation that reveals an occurrence of sexual harassment against an employee, defendant will take disciplinary action that "may include suspension, demotion or discharge, depending upon the circumstances." *See id.,* Ex. G. Thus, defendant has shown only that, upon discovery of the former charges, it would have held an investigation and determined what course of action to undertake depending on the circumstances. Where the conduct occurred five years earlier and did not involve any of defendant's employees or customers, it is certainly possible that defendant would not have fired plaintiff. *Compare Kristufek v. Hussmann Foodserv. Co.,* 985 F.2d 364 (7th Cir.1993) (policy stating em-

vant in discriminatory discharge cases. We focus only on evidence showing whether plaintiff would have been fired.

ployee would be "subject to discharge" not proof that he would have been fired). Therefore, we cannot not grant summary judgment on this basis either.

### B. Falsifying Records

■ First, we find that plaintiff made no misrepresentation regarding his employment with the police department. The employment application submitted by defendant asks for information regarding previous employment during the past ten years. *See* Defendant's Brief, Ex. H. As plaintiff's job as a policeman ended in 1968 and he applied with the Hilton in 1984, his failure to include any information regarding that position cannot be deemed a misrepresentation.

■ Second, we find that a jury question exists as to whether plaintiff misrepresented his dismissal from Resorts International. In the space provided on the employment application for explanations regarding why the applicant left former positions, plaintiff stated "personal." *See id.* Defendant has submitted Resorts International's Employee Status file on plaintiff which indicates that plaintiff was "fired" for "conduct unbecoming a management employee." *See id.*, Ex. G. In addition, it submits portions of plaintiff's deposition in which he states that he was asked to resign because of alleged sexual harassment, that a hearing was held by the employer, and that a decision was reached at the hearing to leave standing the request to resign. *See id.* Ex. D.

While plaintiff's response was less than forthright under the circumstances, we find that a jury could find that "personal reasons" did not constitute a misrepresentation. Instead, a jury may find that the response provided sufficient notice to the employer that further inquiries were advisable.

Moreover, even assuming a misrepresentation, defendant has not demonstrated that it would have fired plaintiff had it discovered that he had lied on the application. Defendant has not produced evidence that other employees found falsifying records have been discharged. Instead, defendant relies on Robert Pickus's certification and the employment application. The certification states

that it was defendant's policy at the time to fire employees for falsifying records, and that plaintiff would have been discharged from the PITCH program had defendant known of the falsification. *See id.*, Ex. F, ¶ 6. The application closes with a release which states that any falsifications "will be considered sufficient" for dismissal. *See id.*, Ex. H, at 5.

Even were we to ignore the self-serving nature of the certification, it is not sufficient to find on summary judgment that defendant would have fired plaintiff for the alleged misrepresentation. It states only that plaintiff would have been discharged from the PITCH program; it does not state that he would have been discharged from the hotel. The application release is similarly deficient. First, it reflects the policy of the Hilton Hotel rather than defendant, Trump's Castle Hotel & Casino. Second, it does not state that all falsifications will result in dismissal, but merely that falsifications will be considered grounds for dismissal. Thus, defendant has failed to meet its initial burden on summary judgment to show that there are no factual issues regarding both whether a misrepresentation has been made or whether plaintiff would have been fired for making such misrepresentations.

Therefore, because the same standard applies to the state and federal discriminatory discharge claims, defendant's motion for summary judgment will be denied as to plaintiff's claims based upon 42 U.S.C. § 1981, Title VII, and the state anti-discrimination statutes.

### IV. APPLICATION TO PLAINTIFF'S STATE CONTRACT CLAIM

■ Regarding the state breach of contract claim, we held above that an employer may not be held liable for breach of an employment contract, if it can show that it had the power to void the contract due to reliance on the employee's material misrepresentations, though it was unaware of that power when the breach occurred. In the present case, the submitted certification adequately demonstrates that plaintiff would not have been selected for the PITCH program had defendant known of his discharge from

Resorts International for alleged sexual harassment. Such conduct could certainly be deemed material by any employer considering an employee for advancement, especially in a situation as here where the employer was selecting someone as a model for a pilot program.

Nevertheless, as discussed earlier, defendant has not demonstrated the absence of a material issue of fact regarding plaintiff's alleged misrepresentation of the circumstances surrounding that discharge. Absent a misrepresentation, defendants erroneous assumption that it was dealing with an employee with a spotless background is merely a unilateral mistake, insufficient to hold the contract voidable. Therefore, we cannot grant summary judgment on the contract claim.

## CONCLUSION

We hold that after acquired evidence of employee misconduct may be used in employment discrimination cases to bar the specific remedies of reinstatement and front-pay if the employer demonstrates that, based solely upon that misconduct, it would have made the same employment decision regarding that employee. If the employer can demonstrate that it would have inevitably discovered such evidence independent of its actual decision regarding the employee, back-pay will be limited to the time between the discharge or failure to hire and the discovery of the misconduct. Otherwise, back-pay awards. will be measured from the time of the discriminatory conduct to the time of judgment. After acquired evidence of misconduct, however, will not act as a bar to any other remedies available to the plaintiff under the statutes upon which his suit is based. We find also that New Jersey courts would apply the identical standard to cases arising under the New Jersey anti-discrimination statutes.

In the instant case, because defendant has failed to show an absence of material fact regarding whether plaintiff misrepresented the reasons he left his former employment or that it would have fired plaintiff had it known of the misrepresentation and underlying facts, summary judgment on the federal and state discrimination claims is denied. Al-

though a different standard applies to the state contract claim, defendant's failure to demonstrate an absence of material fact regarding the misrepresentation similarly requires denial of summary judgment on that claim as well.