Martha RIVERA, et al., Plaintiffs,

v.

NIBCO, INC., et al., Defendants.

No. CV–F 99–6443 AWI SMS.

United States District Court,
E.D. California.

June 18, 2001.

**648**

Counsel for plaintiffs were: Christopher Ho, Donya Fernandez, Julia Figueira–McDonough, Employment Law Center of the Legal Aid Society of San Francisco, San Francisco, CA, William J. Smith, Melvin M. Richtel, Richtel & Smith, Fresno, CA, Alan L. Schlosser, American Civil Liberties Union Foundation of Northern California, San Francisco, CA, and Marielena Hincapié, National Immigration Law Center, Oakland, CA.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

(Doc. No. 33)

SNYDER, United States Magistrate Judge.

The above motion came on regularly for hearing on Friday, June 8, 2001, at Courtroom 4, before the Hon. Sandra M. Snyder, United States Magistrate Judge. Christopher Ho, Esq., and Donya Fernandez, Esq., of the Employment Law Center, appeared on behalf of plaintiffs Martha Rivera, *et al.;* William Hahesy, Esq., and Brian Enos, Esq., of Sagaser, Franson & Jones, appeared on behalf of defendants NIBCO, Inc., and R.M. Wade & Co. (NIBCO).

### FACTS AND PROCEDURAL HISTORY:

Plaintiffs are "limited-English-proficient production workers who have been terminated from or otherwise disadvantaged in the terms and conditions of employment at [NIBCO's] facility ...." First Amended Complaint ¶ 34. Plaintiffs initiated this action on Oct. 1, 1999, and filed their First Amended Complaint on Feb. 24, 2000. Plaintiffs allege NIBCO hired plaintiffs knowing of their lack of English proficiency. *Id.* ¶ 42. Plaintiffs' job descriptions did not require English proficiency, and plaintiffs performed their respective jobs without incident for years. *Id.* ¶¶ 42 and 47. In 1997 or 1998, NIBCO required plaintiffs to take an examination given in the English language. *Id.* ¶ 43. Plaintiffs allege they performed poorly on the examination, and their poor performance on the examination initially led to adverse consequences, i.e., being required to take English as a second language classes, undesirable job assignments, *et al.,* and thereafter terminations. *Id.* ¶¶ 50–52. The Court emphasizes that at this stage of the litigation the above are allegations only.

NIBCO deposed plaintiff Rivera on May 14, 2001. Sagaser Decl. Exh. D. At deposition, counsel for Rivera objected to certain questions asked by counsel for NIBCO regarding where Rivera was married and where Rivera was born, and directed Rivera not to answer such questions. *Id.* 18:22–24, 19:5–8, 21:7–12, 21:14–16, *et al.* This matter was not resolved, even after the parties sought assistance from Magistrate Judge Dennis Beck. *Id.* 27:14 *et seq.* Plaintiffs' motion for protective order followed.

Plaintiffs filed their motion for protective order on May 21, 2001. NIBCO filed opposi-

tion on May 29, 2001. Plaintiffs filed a reply on June 4, 2001, and an errata reply on June 5, 2001.

## DISCUSSION:

■ "Upon motion by a person responding to a discovery request, and for good cause shown, the court is authorized to make any order which justice requires to protect the person from annoyance, embarrassment, oppression, undue burden or expense." Schwarzer, Tashima & Wagstaffe, *Fed. Civ. Proc. Before Trial* ¶ 11:84 (2001). Factors for determining the existence of good cause include whether the information is sought for a legitimate purpose, whether disclosure will violate any privacy interest, whether disclosure will cause a party embarrassment, whether disclosure is important to public health and safety, whether sharing of information among litigants will promote fairness and efficiency in the litigation, and whether the case involves issues of public importance. *Id.* ¶ 11:89.1. The court must balance the interests in allowing discovery against the relative burdens to the parties. *Id.* ¶ 11:90. At issue here are two categories of questions—background questions such as where plaintiffs were born and married, and questions related to the after-acquired-evidence doctrine such as whether or not plaintiffs may legally work in the United States.

### 1. *Background Questions*

#### A. Place of Birth

■ NIBCO seeks to ask each plaintiff where s/he was born. Although each plaintiff has responded through interrogatories identifying their national origin (i.e., of "Mexican Ancestry" for plaintiff Rivera), NIBCO contends where each plaintiff was born is still nevertheless relevant, citing to *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 [94 S.Ct. 334, 38 L.Ed.2d 287] (1973): " 'national origin' in Title VII refers to 'the country where a person was born, or more broadly, the country from which his or her ancestors came.' " NIBCO further refers to the fact that this question is set forth as a form interrogatory by the Judicial Council of California.

Plaintiffs contend such questions bearing upon plaintiffs' immigration status have a chilling effect upon plaintiffs and similarly situated individuals pursuing their workplace rights. This Court agrees. Insofar as there appears to be no dispute that each plaintiff is a member of a protected class, and further questions regarding where each plaintiff was born has no further relevance to this action, plaintiffs' request that NIBCO be precluded from asking such questions is hereby GRANTED. *See Botello v. County of Alameda*, 119 WL 779115, *4 (N.D.Cal.1995).

#### B. Place of Marriage

NIBCO seeks to ask plaintiffs where they were married, citing the marital privilege and issues of credibility as to its possible relevance. *See Haddad v. Lockheed*, 720 F.2d 1454 (9th Cir.1983) (marital privilege sought in discrimination case). Plaintiffs concede this question, along with each plaintiff's educational background, current and past employment, damages, date of birth, other names used, and criminal convictions may be relevant, and accordingly request such matters be subject to a "limitation on its disclosure to anyone other than the parties, their attorneys, and agents (including experts)." P & A 9:18–21 and P & A Exh. B. Insofar as plaintiffs' proposed limitation as to these topics appears to satisfy NIBCO's need and use for such information, and NIBCO has not objected to this proposal in their opposition, plaintiffs' motion is GRANTED as to these items.

### 2. *Employment Status*

■ NIBCO seeks to inquire into plaintiffs' respective past and present employment status. NIBCO concedes, only for purposes of this motion, that Title VII applies to undocumented aliens. NIBCO Oppo. P & A 12 n. 17; *see also EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1517 n. 10 (9th Cir.1989) (court found persuasive, without ruling on issue, EEOC's argument that Title VII applies to undocumented aliens), *overruled on other grounds, Burrell v. Star Nursery, Inc.*, 170 F.3d 951 (9th Cir.1999), *EEOC v. Tortilleria "La Mejor"*, 758 F.Supp. 585 (E.D.Cal.1991) (Title VII extends protection to undocumented workers), *and Murillo v. Rite Stuff Foods, Inc.*, 65 Cal.App.4th 833, 849, 77 Cal.

Rptr.2d 12 (1998) (FEHA applies to undocumented aliens). NIBCO seeks such information for purposes of the "after acquired evidence" doctrine, which could limit a plaintiff's damages and preclude reinstatement.[1] Plaintiffs, in turn, concede the application of this doctrine, but contend NIBCO must obtain such evidence through other means rather than from plaintiffs directly through discovery.

Other courts have similarly struggled with the application of the after acquired evidence doctrine. *See, i.e., Mardell v. Harleysville Life Ins.*, 31 F.3d 1221, 1226–28 (3d Cir.1994) (discussion of different treatments by different circuits), *vacated,* 514 U.S. 1034, 115 S.Ct. 1397, 131 L.Ed.2d 286 (1995), *on remand,* 65 F.3d 1072 (per curiam). In most such cases, however, the defendant-employer's method of discovering such evidence was not in dispute. *See Murillo,* 65 Cal.App.4th at 839, 77 Cal.Rptr.2d 12 (plaintiff volunteered at deposition she was undocumented); *cf. Tortilleria,* 758 F.Supp. at 586 (plaintiff refused to respond to discovery regarding her immigration status for purposes of whether or not Title VII applied to undocumented workers).

At tension here are the possible and alleged misdeeds by both parties. Plaintiffs argue, which NIBCO and this Court accept for purposes of this motion, that Title VII nevertheless offers protection to employees without such documentation. As NIBCO points out, it is illegal for an individual to work without the proper documentation. Plaintiffs and the Court acknowledge that such evidence is relevant.

In reaching a resolution to this issue, the Court compares an employee's fraud during the application for employment (application fraud) with the employee's fraud during employment (résumé fraud). With regard to the former, of which the instant case is allegedly an example, the applicant is qualified to

do the job, but, had the employer known of the fraud, the applicant would not have been hired. With regard to the latter, the applicant was not qualified to do the job but, due to the applicant's fraud, was nevertheless hired.

*Mardell,* a pre-*McKennon* case (*McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995)), addressed the fairness of allowing an employer to find and to use after acquired evidence for purposes of precluding or capping the employee's damages. *Mardell* noted that allowing an employer to escape liability altogether after discovering a legitimate reason for terminating that employee would be tantamount to awarding the employer for engaging in the discriminatory wrongdoing. 31 F.3d at 1229–30. *Mardell* found such a result was ruled out by the language of Title VII, which granted standing to "any individual" rather than "any qualified individual". 31 F.3d at 1231. However, like *McKennon, Mardell* held: "The plaintiff's deceit or misconduct toward the employer is most appropriately considered in the remedies stage ...." 31 F.3d at 1233. In comparison to *McKennon, Mardell* was quicker to realize the chilling effect upon potential discrimination claims that an employer's "thorough inquiry into the details of a plaintiff's pre- and posthiring conduct" would bring. 31 F.3d at 1236. Although *Mardell* did not discuss the manner in which such evidence was acquired, *Mardell* did voice concerns that such evidence would have the stain of retaliation. 31 F.3d at 1238 n. 31.

In *Massey v. Trump's Castle,* 828 F.Supp. 314, 321 (D.N.J.1993), the court noted the Eleventh Circuit's analysis that after acquired evidence penalizes the wronged employee twice because such "evidence would not have been discovered had the employer not discriminated against the employee [to begin with]." 828 F.Supp. at 321. *Massey*

---

1. NIBCO cites to 8 U.S.C. § 1324a in support of their position regarding reinstatement and in support of counsel's position that he has an obligation to protect his client from criminal exposure. Oppo. P & A 3:17–23, 3:26–27, 15:2–5, and 15:21–25. With respect to the latter, section 1324a only subjects an employer to criminal exposure if the employer *knowingly* hires an alien who is unauthorized to work in the United States. As noted by plaintiffs, § 1324b(a)(6) limits an employer from requesting further documents which establish employability. Also, § 1324a(b) says nothing about allowing an employer to investigate an employee's immigration status through the civil discovery process.

allowed back-pay damages, in an after acquired evidence case, through the time of judgment rather than the time of discovery because "[t]he fact that the misconduct was discovered only as a byproduct of the employer's illegal actions cannot be minimized or overlooked." 828 F.Supp. at 323–24. However, if the employer could "prove that the information would have *inevitably* come to light independent of the employer's discriminatory conduct", *Massey* would then allow damages only through the date of inevitable discovery. 828 F.Supp. at 324 (emphasis added).

This Court adopts the reasoning of *Massey* for purposes of discovery, i.e., defendants may engage in independent investigation regarding plaintiffs' immigration status but may not ask plaintiffs such questions directly. As noted by plaintiffs and in *Massey*, such investigation should have been done at the time of hiring, not post-discrimination. 828 F.Supp. at 322 n. 10. The defendant-employer is not placed in an adverse position because but for the lawsuit the employer never would have had reason to pursue such an inquiry.

The Court finds this resolution consistent with *McKennon*. In *McKennon*, the plaintiff-employee brought an action alleging discrimination based on age. At plaintiff's deposition she disclosed that she had wrongfully copied confidential documents which would have otherwise resulted in her termination. The Supreme Court held that in such cases "neither reinstatement nor front pay is an appropriate remedy" and further held backpay damages would terminate on the date the information at issue was acquired. 513 U.S. at 362, 115 S.Ct. at 886. The Supreme Court further abrogated the inevitable discovery rule, as opposed to acquiring such information during the course of discovery, as set forth in *Massey*. *Id.* However, *McKennon* did not address application fraud committed by undocumented aliens. Further, *McKennon* has afforded lower courts some discretion in crafting a resolution to cases with different facts: "The concern that employers might as a routine matter undertake extensive discovery into an employee's back-

ground ... to resist claims under the Act is not an insubstantial one, but we think the authority of the courts to award attorney's fees ... and to invoke the appropriate provisions of the Federal Rules of Civil Procedure will deter *most* abuses." 513 U.S. at 363, 115 S.Ct. at 887 (emphasis added).

This Court agrees with *McKennon's* suggestion that "the authority of the courts to award attorney's fees ... will deter most abuses" for cases involving résumé fraud and cases like *McKennon* where the plaintiff-employee has engaged in wrongdoing warranting termination after being hired. The chilling effect that discovery into the backgrounds of such employees bringing a Title VII action has is limited insofar as those employees merely face a cap on damages. Unlike employees who have committed application fraud or engaged in wrongdoing while employed, however, undocumented employees face a much more serious ramification from background discovery—possible deportment and criminal prosecution. Accordingly, based on this reasoning and based on the partial immunity granted to undocumented employees regarding their standing to bring a Title VII claim as granted by *Hacienda Hotel* and *Tortilleria*, this Court does avail itself to the appropriate provisions of the Federal Rules of Civil Procedure to GRANT plaintiffs' motion for protective order regarding questions related to their documented status. As stated *supra*, employers have an opportunity to investigate this during the time of application. While a defendant-employer may certainly independently investigate a plaintiff-employee's immigration status, the Court declines to sanction such investigation to include the use of the discovery process from the plaintiff directly.