**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**FARMER BROTHERS COMPANY,**
Defendant–Appellant–Cross–
Appellee,

v.

Diana **ESTRADA,** Plaintiff–Intervenor–
Appellee–Cross–Appellant.

Nos. 92–56012, 92–56123.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 1, 1994.

Decided Aug. 3, 1994.

---

Stephen P. Pepe, O'Melveny & Meyers, Los Angeles, CA, for defendant-appellant-cross-appellee.

Theresa M. Traber, Bert Voorhees, Traber & Voorhees, Pasadena, CA, for plaintiff-intervenor-appellee-cross-appellant.

Before: D.W. NELSON, REINHARDT, and BRUNETTI, Circuit Judges.

Opinion by Judge D.W. NELSON; Concurrence by Judge BRUNETTI.

D.W. NELSON, Circuit Judge:

The district court found appellant/cross-appellee Farmer Brothers ("Farmer Bros.") liable for intentional gender discrimination against appellee/cross-appellant Diana Estrada ("Estrada") in violation of Title VII and the California Fair Employment and Housing Act ("FEHA"). The district court awarded Estrada $83,343.48 in backpay and $833,434.80 in punitive damages.

Farmer Bros. filed a timely appeal and Estrada cross-appealed. We have jurisdiction over the appeals pursuant to 28 U.S.C. § 1291. We affirm the district court on all claims, with the exception of the district court's calculation of Estrada's lost health and life insurance benefits, which we reverse and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

In January of 1980, Estrada began working as an unskilled machine operator in Farmer Bros.'s Allied Production Department. Her first supervisor, Jack Lesser, testified that Estrada was a satisfactory employee without attendance problems. On June 28, 1982, Estrada was moved to the Coffee Department, where she was supervised by Jess Ward, who also indicated that he had no problems with her performance. Although Farmer Bros. maintains that Es-

trada had a poor attendance record, the record reveals that during her employment at Farmer Bros., Estrada received oral commendations and was never reprimanded ·or cited for any reason. Throughout the period of her employment, Estrada was a member of one of the unions that represented Farmer Bros.'s production plant employees. Pursuant to a collective bargaining agreement (the "agreement") between the unions and Farmer Bros., laid-off employees retained their seniority and recall rights for a period of nine months after the date of their layoff.

In June, 1982, Farmer Bros.'s president, Roy F. Farmer, decided to reduce permanently the percentage of women employed in production jobs. To achieve this goal, President Farmer implemented a three-step plan, which he hoped would enable him both to circumvent the agreement with the unions and also to create the appearance that his employment decision was gender neutral. Pursuant to the plan, 21 Farmer Bros. employees, 10 men and 11 women, were laid off; and, during the nine-month period following the layoffs, no one was recalled and no new employee was hired. At the end of the nine month period, however, as soon as the laid-off employees' recall rights had expired, Farmer Bros. began hiring new employees. In the course of just a few months, the company filled the vacancies that had been created by the earlier layoffs by hiring only men. Although Farmer Bros.'s vice-president, George Bennett, and its plant managers, Gene David and Jess Ward, knew of President Farmer Bros.'s plan in advance, they sent a "layoff notice" to all Farmer Bros.'s employees, telling them that several employees temporarily were being laid off due to a reduction in work force. When the layoffs began, several of the male employees were able to retain their employment with Farmer Bros. by "bumping" a less senior employee and assuming that employee's job classification. No woman was even given the option of continuing her employment in this manner. At least one of the men who continued to work at Farmer Bros. by bumping a less senior employee was himself less senior than eight of the women who were laid off.

On September 17, 1982 the last employee was laid off.

Farmer Bros.'s justification for the layoffs was that it was having financial difficulties. However, in the year ending June 30, 1982, the beginning of the layoff period, Farmer Bros. experienced its highest financial growth rate. In fact, during the nine months following the layoffs, Farmer Bros. had to increase employee overtime to keep up with its increased production demand. In July 1983, just days after the recall rights of the laid-off employees had expired, Farmer Bros. posted notices announcing openings for five production jobs. By the end of 1983, Farmer Bros. had announced 15 job openings and had hired 16 male applicants, two of whom had been laid off in 1982.

In August 1983, Estrada applied for a machine operator job with Farmer Bros. Farmer Bros.'s personnel manager, Beverly Stillson, told Estrada that there were no openings and asked her to fill out an application card instead of a form. Stillson assured Estrada that her application card would be kept on file. No one from Farmer Bros. ever contacted her, and the following month Farmer Bros. hired a man with no prior experience as a machine operator. From September 1983 through February 1988, Farmer Bros. hired 64 production employees—63 men, and 1 woman.[1] Of that number, 43 were machine operators, all of whom were males. At trial, Stillson admitted that, beginning in 1983, she screened out women who applied for machine operator positions. Stillson reported having told a former co-worker that she "did not like what was going on out there in the plant with managers not hiring any women." [ER:254].

On September 23, 1983, Estrada filed a Charge of Discrimination with the California Department of Fair Employment and Housing ("DFEH"). Less than a month later, Estrada received a letter from the DFEH director informing her that, pursuant to a work-sharing agreement between the two agencies, her claim had been forwarded to the Equal Employment Opportunity Commission ("EEOC") and that, under Cal. Gov'tCode § 12965(b), she had a right to

---

1. The one woman Farmer Bros. hired was retained as a temporary order filler.

bring a civil suit under the FEHA within one year of the date of the notice.

The EEOC ended its investigation and its attempt to conciliate in August 1987, and, on February 20, 1988, filed a class action alleging that Farmer Bros. had discriminated against more than thirty of its former women employees, including Estrada. On June 7, 1988, Estrada filed a motion to intervene in the EEOC's lawsuit, which the district court granted. On September 27, 1989, Estrada filed a motion to amend her complaint-in-intervention to include identical gender discrimination claims under the FEHA, which the court granted on December 4, 1989. The district court ruled that the state claims "related back" to June 1988, when Estrada moved to intervene. The EEOC lawsuit was settled on September 17, 1990, when the district court approved a consent decree between Farmer Bros. and the EEOC. Under the decree, the EEOC agreed to dismiss the lawsuit with prejudice and Farmer Bros. agreed to adopt multiple procedures to eliminate gender discrimination in applications, employment, promotions, and training, and to pay the plaintiff class a total of $126,152 to be divided equally among the 30–40 class members.

The district court found that after September, 1985, Estrada failed to mitigate damages and, therefore, granted partial summary judgment in favor of Farmer Bros. On July 3, 1991, over Estrada's objection, the district court granted Farmer Bros.'s motion to bifurcate the liability and damages phases of the action. Farmer Bros. opted for a bench trial rather than a jury trial.

At the end of an eleven day trial on liability, the district court issued findings of fact and conclusions of law. The district court found that there was substantial direct evidence that Farmer Bros.'s motive for laying off Estrada and her women co-workers was gender discrimination. The court based its conclusion partly on the testimony of officers and managers who had participated in the decision to lay off Estrada. Former Farmer Bros. employee, James Alger, whose testimony the district court found credible, revealed

that Ward (one of Estrada's supervisors), had reported that President Farmer announced that he "would spend every last dime" to keep women employees from coming back, and uttered words to the effect that "the only people you will be seeing running the lines will be men; there will be no more women hired." [ER:232]. Farmer Bros.'s Vice–President of Administration, Roy E. Farmer, testified that, after reviewing the gender composition of the plant work force and Farmer Bros.'s hiring statistics, he told his father, President Farmer, that the company employed a statistically low number of women in the plant and that Farmer Bros. would have to "start looking at women in the same way it looked at men." [ER:255]; Bennett, Farmer Bros.'s Vice–President, testified that he had not considered and would not consider women for a whole range of production jobs because he thought women lacked the physical capacity to do the work required.[2] The court found that sexist views were common among Farmer Bros.'s managers.

The district court also found that the justifications put forth by Farmer Bros. for its decision to lay off and eventually to terminate Estrada and her co-workers were pretextual. Among the court's express findings were the following: in the year the layoffs started, Farmer Bros. had the greatest growth year in its history, Farmer Bros.'s sole reason for not rehiring Estrada was her gender, and Farmer Bros. failed to show that it would have rejected Estrada based on her attendance record. The court further found that, while Farmer Bros. had a written policy prohibiting discrimination in employment, it had no mechanism, procedures or educational programs to ensure that the policy would be enforced. The district court concluded that Farmer Bros. was liable under Title VII and the FEHA for intentional gender discrimination.

The damages phase of the trial began on May 4, 1992. On July 20, 1992, the district court entered its final Judgment in favor of Estrada.

---

2. Bennett also testified "not only that men were needed for the job, but that only Mexican men could stand the prolonged exposure to 'chili dust.'" [ER:257].

*DISCUSSION*

## I. *Evidence of Sexual Harassment*

■ Farmer Bros. contends that the district court abused its discretion and committed reversible error when it allowed Estrada to present testimony about incidents of sexual harassment by Lesser, but restricted the extent of Farmer Bros.'s rebuttal evidence. We review the district court's evidentiary rulings for abuse of discretion, *United States v. Crespo de Llano*, 838 F.2d 1006, 1018 (9th Cir.1987), and we affirm.

During trial, Estrada called Joyce Ellis, a former Farmer Bros. employee, to the stand. Ellis testified that in the 1950's and early 1960's, when Lesser was her supervisor, he sexually harassed her by offensive physical touching. Ellis also testified that she observed Lesser touching other women employees at Farmer Bros. in a sexually offensive manner, and specifically identified Margaret Cummings as one such woman.

James Alger, also called by Estrada, testified that during the time he worked at Farmer Bros., from 1979 to 1983, Lesser "continually made foul comments," [2 RT:69], about female employees and stated that he had observed Lesser touch women employees under his supervision in a sexually offensive manner.[3] Estrada attempted to present additional evidence of sexual harassment through other witnesses, but the district court, sustaining Farmer Bros.'s objection, limited Estrada's evidence of sexual harassment to the testimony of Ellis and Alger.

When he testified, Lesser was allowed to rebut the sexual harassment allegations against him. The defense also rebutted Estrada's sexual harassment evidence with testimony from Cummings, who denied that Lesser had touched her. When Farmer Bros. sought to have Cummings testify further that she did not observe any other acts of sexual harassment by Lesser, the district court sustained Estrada's objection. Farmer

Bros. also proffered the testimony of Bobby Southern, another Farmer Bros. employee who, according to the proffer, would have testified that she did not observe Lesser commit acts of sexual harassment. Southern's testimony on this issue was not allowed by the district court either.

According to Farmer Bros., the district court should have excluded Ellis' and Alger's testimony regarding Lesser's sexual harassment because evidence of sexual harassment is not relevant to prove a gender discrimination claim, and, given the inflammatory and emotional impact of this evidence, its wrongful admission was not harmless.

■ Farmer Bros.'s contention that evidence of sexual harassment can never be relevant to a claim of discriminatory discharge on the basis of gender is without merit. Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Under Rule 401, the district court's admission of evidence regarding Lesser's sexual harassment and his disparaging remarks about women was proper if the evidence made it "more or less probable" that Estrada was discharged or not rehired because of her gender.

■ Individuals who engage in sexual harassment may have different motives. Sometimes, an employer or supervisor may use his power within the company's hierarchy in order to gratify his sexual desires. When an employee becomes the victim of her boss' unwanted sexual attention, she may be forced to tolerate his sexually harassing conduct for fear that her job or her advancement in the company are at risk. A woman in this circumstance may reasonably feel subordinated and belittled even though the harasser's primary purpose is to seduce her

---

**3.** Alger testified that Lesser "would generally comment on the size of their breasts, the way they walked, the way they moved." [2RT:69]. Alger emphasized that Lesser made derogatory remarks about women on a daily basis. [2RT:68]. When asked to give an example of the kind of comment Lesser made, Alger reported

"that there was an occasion where [Lesser] commented on a woman's breasts, that they were large enough that maybe she should have crutches for them." [2RT:69]. Alger also testified that Lesser touched women on "[t]heir rear ends, their breasts, their crotch. It didn't matter." [2 RT:71].

rather than to demean her or cause her anguish and distress. *See, e.g., King v. Board of Regents of the Univ. of Wisconsin Sys.*, 898 F.2d 533, 539 (7th Cir.1990) (holding that sexual harassment is actionable even when motivated by sexual desires rather than dislike of women or intent to harass); *see also Horn v. Duke Homes, Div. of Windsor Mobile Homes*, 755 F.2d 599, 601–03 (7th Cir.1985) (describing defendant's use of his supervisory power to fulfill his sexual desires). In other circumstances, however, sexual harassment may be symptomatic of gender-based hostility, the employer or supervisor using sexual harassment primarily to subordinate women, to remind them of their lower status in the workplace, and to demean them. In this latter circumstance, the "sexual" element of the harassment is only secondary. *See King*, 898 F.2d at 539. Because hostility against women underlies decisions to discharge or to refuse to hire women because of their gender, evidence of sexual harassment often will be relevant to claims of gender-based employment discrimination. *See, e.g., Waltman v. International Paper Co.*, 875 F.2d 468, 471–72, 482 (5th Cir.1989) (discussing male employees' use of sexual harassment for the purpose of distressing and demeaning female co-worker).

■ Of course, in many cases the sexual harasser will have a mixed motive for engaging in this type of conduct and, as with any overlapping categories, definitional problems will arise. Nevertheless, the distinction between sexual harassment which arises out of sexual desire and that which reflects hatred of women retains its validity. *See, e.g., Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir.1994) (finding that supervisor used sexual harassment to distress or disempower rather than to seduce women employees). The finder of fact, presented with evidence of sexual harassment, will have to determine whether and to what extent the employer's or supervisor's harassing conduct is probative of his intent to discriminate against women in his employment decisions. In order to make such a determination, how-

ever, the factfinder must first have access to the evidence.

■ There is no reason for us to decide whether any error occurred with respect to the admission of Ellis' and Alger's testimony or the limitation on rebuttal evidence. Under the facts of this case, if there was an evidentiary error, it was patently harmless; it is inconceivable that the disputed testimony influenced the result in any way. First, in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial. For an extreme statement of this view, *see, Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517 (5th Cir. Unit A 1981) (holding that excluding relevant evidence in a bench trial on the basis of unfair prejudice is a useless and illogical procedure). Second, the district court did not rely on Ellis' testimony, and specifically stated that, based on Lesser's testimony alone, it still would have concluded that Lesser held sexist and stereotypical views of women employees. [ER:160–61].[4] Third, by allowing Farmer Bros. to introduce evidence that specifically rebutted the allegations regarding Lesser, the district court substantially minimized the possibility that the testimony regarding his acts could unfairly prejudice Farmer Bros. Fourth, while the evidence regarding Lesser's behavior and attitude was remote and tangential, the other more probative evidence of Farmer Bros.'s discriminatory conduct was both direct and overwhelming; it left no doubt whatsoever as to the motivation for Farmer Bros.'s actions and as to the proper outcome of the case.

## II. *Exhaustion of Administrative Remedies*

Farmer Bros. maintains that the district court lacked subject matter jurisdiction over Estrada's discriminatory layoff claim because Estrada failed to include this particular claim in the charges she filed with the EEOC and the DHEH.

---

4. In fact, although the plaintiff's proposed findings included a statement that Ellis' testimony established that Lesser had sexually harassed and abused women, the district court declined to adopt that proposed finding. [ER:260].

To establish federal subject matter jurisdiction, Estrada was required to exhaust her EEOC administrative remedies before seeking federal adjudication of her claims. *See Sosa v. Hiraoka,* 920 F.2d 1451, 1456 (9th Cir.1990). As we explained in *Sosa,* "[t]he jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation." *Id.* (citing *Green v. Los Angeles County Superintendent of Sch.,* 883 F.2d 1472, 1476 (9th Cir.1989)). The district court had subject matter jurisdiction over Estrada's allegations of discriminatory layoff if that claim fell within the scope of the EEOC's *actual* investigation or an " 'EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.' " *Sosa,* 920 F.2d at 1456 (citations omitted).[5]

We review *de novo* the district court's determination that Estrada exhausted her administrative remedies with regard to her discriminatory layoff claim and, therefore, that it had subject matter jurisdiction. *United States v. Layton,* 855 F.2d 1388, 1394 (9th Cir.1988), *cert. denied,* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989). In reviewing the jurisdictional question, we are required under Ninth Circuit law to construe Estrada's EEOC charge "with the utmost liberality." *Kaplan v. International Alliance of Theatrical & Stage Employees,* 525 F.2d 1354, 1359 (9th Cir.1975); *see also Chung v. Pomona Valley Community Hosp.,* 667 F.2d 788, 790 (9th Cir.1982).

Contrary to Farmer Bros.'s contention, Estrada included her claim of discriminatory layoff in her charge with the EEOC. [Court Record:Vol.14 at 5]. But even assuming that the EEOC charge can be interpreted as failing explicitly to raise a claim of discriminatory layoff, Farmer Bros. cannot reasonably argue that the district court erred in concluding that Estrada's discriminatory layoff claim was "like and reasonably related" to her allegations of discriminatory failure to recall and rehire set forth in her EEOC and DFEH charges, and that Estrada therefore had exhausted her administrative remedies. *See Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir. 1973).

Estrada's theory has always been that Farmer Bros. planned to lay off the same number of women and men, not rehire anyone during the nine-month period in which the "temporarily laid-off" employees retained recall rights, and then hire only men to fill the positions originally held by an equal number of men and women, thereby reducing the percentage of women employed at Farmer Bros.'s production plant without appearing to discriminate on the basis of gender. Because the layoff was an integral part of Farmer Bros.'s discriminatory scheme, it was reasonably related to Estrada's charge of discriminatory failure to recall or to rehire. Not only did the EEOC charge provide adequate notice to Farmer Bros. of Estrada's discriminatory layoff claim, but also in order to evaluate (or even to understand) Estrada's theory of the case, it was *necessary* for the EEOC to investigate the circumstances of Estrada's layoff. Accordingly, the district court correctly exercised jurisdiction over Estrada's layoff claim.

### III. *Discriminatory Failure to Recall and to Rehire*

The district court concluded that Estrada had established that Farmer Bros. had intentionally discriminated against her because of her gender under both *Price Waterhouse v. Hopkins,* 490 U.S. 228, 237, 109 S.Ct. 1775, 1783, 104 L.Ed.2d 268 (1989) (holding that an employer who purposefully discriminates on

---

5. *See also Gibbs v. Pierce County Law Enforcement Support,* 785 F.2d 1396, 1400 (9th Cir. 1986) (holding that although plaintiffs' EEOC charge did not include the claims underlying their "principal litigation theory," they had met the exhaustion requirement because these claims would have been within the scope of a "reasonably thorough investigation"); *Serpe v. Four-Phase Systems, Inc.,* 718 F.2d 935, 937 (9th Cir. 1983) (holding that the district court did not lack jurisdiction over a claim not stated in the EEOC charge "which can reasonably be expected to grow out of the charge of discrimination"); *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir.1973) ("[w]hen an employee seeks judicial relief for incidents not listed in his [or her] original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge.")

the basis of gender, race, national origin, or religion and who cannot prove by a preponderance of the evidence that he or she would have made the same employment decision absent the discrimination is liable under Title VII), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 802, 93 S.Ct. 1817, 1823, 1824, 36 L.Ed.2d 668 (1973) (holding that a Title VII claimant can establish a *prima facie* case by showing that he or she is a member of protected group, was qualified for the job, was rejected or discharged; and thereafter the employer continued to seek applicant with complainant's qualifications). Farmer Bros. argues that, because it failed to recall approximately the same number of men as it did women, it was improper for the district court to find it liable under either standard. Farmer Bros.'s argument is profoundly flawed.

We review this question *de novo.* See *Nanty v. Barrows Co.,* 660 F.2d 1327, 1330 (9th Cir.1981).

■ The district court found that in order to reduce the number of women it employed, Farmer Bros. devised a scheme both to circumvent the agreement with the union and to reduce permanently the percentage of women while giving the appearance of gender neutrality. Estrada was able to prove, and Farmer Bros. unable to rebut, that the initial layoffs and the subsequent decision not to recall or to rehire her were part of a three-step plan to "get rid" of women employees. Therefore, it is irrelevant that, at the initial stage of the layoffs, the same number of women and men were laid off or that those same individuals were not recalled. The only permissible inference that can be drawn from Farmer Bros.'s failure to recall the ten men who had been laid off is that the company did not care which men it employed as long as it hired males.

■ Farmer Bros. insists that it did not engage in gender-based discrimination because its employment decisions appeared to be neutral. The purpose of Title VII is not simply to eliminate the appearance of gender inequality, but also to eradicate discriminatory treatment based on gender. It is troubling, therefore, that Farmer Bros. assumes that the mere appearance of gender neutrality negates the district court's finding that Farmer Bros. engaged in gender discrimination.

■ Farmer Bros. also contends that Estrada failed to show that there were any available machine operator positions at the time she reapplied for a job at Farmer Bros. Farmer Bros.'s claim is contradicted by the facts. The district court found that there were several machine operator openings filled during the 6-month period in which Estrada's application was active. Moreover, as the testimony of Farmer Bros.'s personnel manager, Beverly Stillson, revealed, Farmer Bros. refused to consider Estrada or any other woman for a machine operator or other plant position. Finally, the district court found that shortly after Farmer Bros. rejected Estrada's application, it hired a completely inexperienced man to fill the position for which Estrada had applied. Accordingly, we affirm the district court's determination that Farmer Bros.'s decision to lay off Estrada, its failure to recall her, and its failure to rehire her, were based on Estrada's gender and that, therefore, Farmer Bros. is liable under Title VII.

## IV. *After-Acquired Evidence*

For the first time on appeal, Farmer Bros. raises an after-acquired evidence defense. According to Farmer Bros., Estrada should be precluded from obtaining any relief under Title VII and the FEHA because, during the course of this lawsuit, Farmer Bros. allegedly discovered that Estrada had misrepresented two facts in her original job application. Farmer Bros. contends that Estrada's admission that she erroneously claimed in her job application that she had graduated from high school, together with her alleged misrepresentation that the reason she had left her previous job at Teledyne was her child's health problems while in fact Teledyne had fired Estrada because of her poor attendance, constitute "after-acquired evidence" of application fraud. Although Farmer Bros. admittedly did not base its decision to terminate Estrada on these alleged misrepresentations, Farmer Bros. argues that this evidence, if shown to be accurate, should relieve

the company from having to pay any damages.

■ We do not reach the merits of Farmer Bros.'s after-acquired evidence defense, however, because Farmer Bros. failed to reserve this issue for appeal. In support of its claim that it did not waive the after-acquired defense, Farmer Bros. contends that it intended to raise the issue when it attempted to call a witness who would have testified that Estrada had been fired from her previous job at Teledyne because of her bad attendance record. According to Farmer Bros., the district court's refusal to allow the witness to testify deprived Farmer Bros. of the opportunity to raise the after-acquired evidence defense. The record unmistakably demonstrates, however, that the purpose of the proffer was to impeach Estrada's credibility, not to raise the after-acquired evidence defense. Similarly, when Farmer Bros. in closing argument alleged that Estrada had lied in her application, it did so solely to undermine Estrada's credibility and never so much as mentioned the after-acquired evidence defense. Furthermore, Farmer Bros. failed to include the after-acquired evidence defense in its proposed findings of fact and conclusions of law and made no mention of this issue in any of the pre- or posttrial motions, including its statement of issues for appeal and its memorandum on damages. In fact, it appears that the after-acquired evidence defense is not mentioned anywhere in the entire district court record. Under these circumstances, we must conclude that Farmer Bros. failed to raise properly the after-acquired evidence defense. The issue is one which requires factual as well as legal developments. Accordingly, we decline to reach it

for the first time on appeal. *See Abela v. Gustafson*, 888 F.2d 1258, 1266–67 (9th Cir. 1989) (court will not consider for the first time on appeal an issue not raised before the district court); *see also, Gonzales v. Parks*, 830 F.2d 1033, 1037 (9th Cir.1987) (same).[6]

■ Finally, we emphasize that, even if we were to decide this issue, it would be inequitable to hold that after-acquired evidence of misrepresentations in a job application should preclude an otherwise successful plaintiff from recovering damages. In *Massey v. Trump's Castle Hotel and Casino*, 828 F.Supp. 314 (D.N.J.1993), the court reasoned persuasively that although after-acquired evidence of application fraud, if proven to be material, might limit the employee's right to reinstatement and to frontpay, such evidence does not relieve a defendant who has been found liable for employment discrimination from paying other forms of damages. As the *Massey* court concluded, such a rule "effectuates a logical and fair balance of employer and employee interests." *Massey*, 828 F.Supp. at 325.[7] We note further that whether *any* of the ordinary remedies of an illegally discharged employee other than damages should be forfeited would depend upon all the facts and circumstances of the case. It would make no sense for example to permit an employer to refuse to reinstate an illegally discharged employee who had properly performed her job in a store, factory, or warehouse for twenty years simply because a generation earlier she had exaggerated the facts regarding her educational experience in hopes of obtaining employment desperately needed to support herself or her family. On the other hand, if it turns out that a person working in a hospital as a doctor never ob-

---

6. Farmer Bros. explains its failure to request a finding of fact regarding the allegation of application fraud with its perception that the district court judge had concluded that such fraud would not affect Estrada's discrimination claim. On this record, we are unpersuaded by Farmer Bros.'s futility argument. Even assuming Farmer Bros. honestly believed that the district court would not be persuaded by Farmer Bros.'s after-acquired evidence defense, it was required to present the defense at the appropriate time in order to reserve the issue on appeal. On these facts, Farmer Bros.'s argument would relieve every losing litigant from its obligation to present

all the claims to the district court before seeking appellate review of that court's decision.

7. *See* Cheryl Krause Zemelman, *The After–Acquired Evidence Defense to Employment Discrimination Claims: The Privatization of Title VII and the Contours of Social Responsibility*, 46 Stanford Law Review 175, 177–88 (1993) (tracing the development of the after-acquired evidence defense). In any event, the Supreme Court will soon decide this issue. *See McKennon v. Nashville Banner Publishing Co.*, 9 F.3d 539 (6th Cir. 1993), *cert. granted*, —— U.S. ——, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994).

tained a medical degree or license, the hospital is obviously not required to reinstate him, no matter how unlawful the original reason for his discharge. Thus, no absolute rule can provide the answer to what relief other than damages may be barred when an employee who has been illegally discharged turns out to have misstated the truth on an employment application. However, common sense and a reasonably developed sense of equity can.

## V. *Damages*

### A. Lost Health Care and Benefits

Farmer Bros. maintains that in calculating Estrada's lost health insurance benefits on the basis of the insurance premiums Farmer Bros. would have paid between 1982 and 1985 had Estrada not been wrongfully terminated, the district court applied the wrong legal standard.

■■■ "Whether the district court selected the correct legal standard in computing damages is reviewed *de novo.*" *Galindo v. Stoody Co.,* 793 F.2d 1502, 1516 (9th Cir. 1986) (citing *McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc) *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)).

■■■ In *Galindo,* the court held that the proper measure of lost health or life insurance benefits is "the amount of any actual expenses incurred" by the employee. 793 F.2d at 1517. According to the *Galindo* court, "lost insurance coverage, unless replaced or unless actual expenses are incurred, is simply not a monetary benefit owing to the plaintiff." *Id.* As Estrada points out, the method of calculating damages set forth in *Galindo* disadvantages those who cannot afford to pay insurance premiums after being discharged.[8] Nonetheless, we are bound by Ninth Circuit precedent and, therefore, we remand with instructions that the district court calculate Estrada's lost health and life insurance benefits based on her out-of-pocket expenses. We affirm the district

court's determination of Estrada's other fringe benefits and backpay award. *See id.* at 1517–18 (plaintiff is "of course entitled to any lost seniority pay, or any other fringe benefits he would have actually received").

### B. Punitive Damages

The district court concluded that Estrada was entitled to $833,434.80 in punitive damages under the FEHA and Title VII. Farmer Bros. contends that the court should not have granted any relief under the FEHA claim because this claim should have been dismissed as untimely. According to Farmer Bros., the court also should not have awarded punitive damages under Title VII, because the 1991 Civil Rights Act, which authorizes punitive damages under Title VII, should not be applied retroactively.

Since this case was submitted, the Supreme Court has held that Section 102 of the 1991 Civil Rights Act does not apply retroactively. *See Landgraf v. USI Film Products,* — U.S. —, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Therefore, we must determine whether the district court properly ruled that Estrada's FEHA claim was not time-barred. This is a question of law which we review *de novo. See Bouman v. Block,* 940 F.2d 1211, 1230 (9th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991).

■■■ Under Cal.Govt.Code § 12965(b), a claimant "may bring a civil action under [the FEHA] ... within one year" from the date the DFEH issued its right to sue letter. The DFEH issued its right-to-sue letter on October 7, 1983. Estrada amended her complaint-in-intervention to include the FEHA claim in December 1989, but, as the district court correctly held, the amendment "related back" to June 7, 1988, the date Estrada filed her original complaint-in-intervention. Therefore, Estrada filed her FEHA claim more than four years after she received her right-to-sue letter. Despite this passage of time, the district court ruled that Estrada's FEHA claim was not time barred by section

---

8. *See also, Richardson v. Restaurant Marketing Ass., Inc.,* 527 F.Supp. 690, 698 (N.D.Cal.1981) (proper calculation of plaintiff's lost insurance benefits is the amount the employer "would have contributed to the union Health and Welfare fund ... [because] [f]ailure by plaintiffs to buy replacement coverage was due to an inability to afford such coverage rather than a lack of desire for it").

12965(b) because the FEHA's statute of limitation was tolled during the EEOC's investigation of Estrada's claim. We agree.

Under *Salgado v. Atlantic Richfield Co.,* 823 F.2d 1322, 1326 (9th Cir.1987), Estrada's FEHA claim was subject to equitable tolling. In *Salgado,* the court held that where a claimant has the choice of pursuing two remedies for its claim, and chooses to pursue the remedy accorded by the EEOC, the FEHA's statute of limitation under Cal.Govt.Code § 12965(b) is tolled pending resolution of the EEOC investigation. Farmer Bros. contends, however, that *Salgado* was wrongly decided and, presumably, asks this court either to reverse *Salgado* or to ignore valid Ninth Circuit precedent. We are of course bound by valid Ninth Circuit precedent and, therefore, even if we were to agree with Farmer Bros.'s argument, which we do not, we could not disregard *Salgado.*

Therefore, we affirm the district court's ruling that Estrada's FEHA claim was not time barred and that punitive damages under the FEHA claim were proper. Because Section 102 of the 1991 Civil Rights Act does not apply retroactively, *Landgraf,* — U.S. —, 114 S.Ct. 1483, we need not reach the merits of Farmer Bros.'s claim that the Act's $300,-000 cap on punitive damages limits Estrada's recovery under FEHA. We are, of course, bound by the Supreme Court's ruling in *Landgraf* regardless of whether the Act's retroactive application would extend the rights of Title VII plaintiffs or, as under Farmer Bros.'s argument here, limit plaintiffs' recovery.

Farmer Bros. next contends that the district court abused its discretion when it awarded Estrada $833,434.80 in punitive damages, ten times the amount of Estrada's compensatory damages.

We review the question of whether the district court awarded an unreasonable amount of punitive damages for abuse of discretion. *See Bouman,* 940 F.2d at 1234.

Under both state and federal law, the district court's punitive damage award must bear a reasonable relationship to the amount of compensatory damages. *See Neal v. Farmers Ins. Exchg.,* 21 Cal.3d 910, 928, 148 Cal.Rptr. 389, 582 P.2d 980 (1978); *see also Bouman,* 940 F.2d at 1234. According to Farmer Bros., since the Supreme Court decided *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), there has been a trend among both federal and California courts to limit the amount of punitive damages to no more than four times the amount of compensatory damages, at least in cases where the compensatory damages were substantial. In support of its claim, Farmer Bros. cites *Bouman* for the proposition that, under California law, "[t]wice the amount of compensatory damages is a reasonable award." 940 F.2d at 1234. Farmer Bros.'s reliance on *Bouman* is misplaced for two reasons. First, in holding that a two-to-one ratio between the amount of compensatory and punitive damages was reasonable, the *Bouman* court was not setting forth a limitation on what constitutes a reasonable ratio, but rather was rejecting the defendant's claim that such an award was excessive under California law. *Id.* Second, the *Bouman* court expressly rejected the claim that the reasonableness of a punitive damage award can be determined by a formula like the "no more than four-to-one ratio" rule suggested by Farmer Bros.[9] The *Bouman* court explained that, under California law, "there is no fixed ratio or formula for determining the proper proportion between" compensatory and punitive damages. *Id.* The *Bouman* court correctly applied *Haslip,* in which the Supreme Court explicitly held that in determining the reasonableness of punitive damages "[w]e need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would

---

9. In *Bouman,* the district court had awarded over $100,000 in punitive damages. The court of appeals remanded to the district court "for an articulation of its reasons for imposing punitive damages." *Id.* at 1234. However, in *rejecting* the defendant's claim that, even if justified, the amount of punitive damages was excessive, the *Bouman* court cited *Gagnon v. Continental Casualty Co.,* 211 Cal.App.3d 1598, 1603–05, 260 Cal. Rptr. 305 (1989), and described that case as "upholding punitive to compensatory damages ratio of 190.5 to 1." *Bouman,* 940 F.2d at 1234. Thus, *Bouman* cannot be read as requiring a four-to-one ratio.

fit every case." 499 U.S. at 18, 111 S.Ct. at 1043.

The other cases cited by Farmer Bros. also fail to support its contention. For example, although Farmer Bros. claims that *Las Palmas Assoc. v. Las Palmas Center Assoc.*, 235 Cal.App.3d 1220, 1 Cal.Rptr.2d 301 (1991), modified a damage award to $2 million in punitive damages and $464,786 in total compensatory damages, to create a four-to-one relationship, neither the mathematics nor the reasoning of *Las Palmas* support Farmer Bros.'s position. In *Las Palmas,* not only was the amount of compensatory damages $232,393 rather than $464,786, *id.* at 1228, 1 Cal.Rptr.2d 301, but the court explicitly stated that the "7.9 to 1 ratio between compensatory and punitive damages ... [was] well within reason." *Id.* at 1255, 1 Cal.Rptr.2d 301.

■ Acknowledging that in many cases decided after *Haslip,* California and federal courts have approved awards of punitive damages that exceeded a four-to-one ratio, Farmer Bros. argues that cases involving less than "substantial" compensatory damages awards should not be considered controlling. Farmer Bros., however, fails to cite even one case where the court considered this factor an appropriate basis for determining reasonable punitive damages. Moreover, we reject Farmer Bros.'s suggestion that courts should limit the punitive award to four times the compensatory award where the compensatory award is substantial, but allow a much higher ratio where compensatory damages are minimal. Such a rule would undermine the very reasoning that leads us to consider the amount of compensatory damages "a relevant yardstick by which to measure the appropriateness of a punitive award." *Bouman,* 940 F.2d at 1234. An employer who has caused only minimal injury to the plaintiff, resulting in a relatively low compensatory damage award, is likely to be less culpable than an employer whose discriminatory conduct has caused substantial injury. Although it may be appropriate generally to impose a larger punitive damage award where the defendant's financial situation is such that he or she would not be deterred unless required to pay a large sum of money, it would be wrong to impose a proportionally higher award on a less culpable defendant simply *because* he or she has caused a relatively small injury, or to impose a proportionally lower award on a more culpable defendant simply *because* he or she caused a substantial injury.

■ Punitive damages are intended to punish a defendant's past misconduct and deter future wrongful acts. *See Neal,* 21 Cal.3d at 929 n. 13, 148 Cal.Rptr. 389, 582 P.2d 980. To achieve these two goals, courts have set forth several criteria for determining reasonable punitive damages. Under California law, courts should determine the amount of punitive damages based on the severity of the defendant's misconduct; the injury caused; and the financial condition of the defendant. *Id.* at 928, 148 Cal.Rptr. 389, 582 P.2d 980. Obviously, each criterion is designed to facilitate an award of punitive damages that will both punish and deter the defendant. To require that a court preserve a "no more than a four-to-one ratio" between punitive and compensatory damages would unnecessarily interfere with the court's ability to meet these objectives. Given that the amount of punitive damages required to deter and punish the defendant necessarily is dependent on the circumstances of each case, adoption of such a formula would frustrate the purpose of punitive damages.

■ We agree with Farmer Bros. that, in calculating punitive damages, the court must consider the reprehensibility of the defendant's actions as well as any mitigating conduct. However, Farmer Bros.'s contention that the district court abused its discretion in determining the extent of Farmer Bros.'s reprehensibility and efforts at mitigation lacks support in the record. Accordingly, we hold that the district court properly concluded that Estrada demonstrated by clear and convincing evidence that Farmer Bros. acted fraudulently and with oppression and malice in discriminating against her. We thus affirm the district court's decision to award ten times Estrada's backpay award, or 0.05% of Farmer Bros.'s net worth, in punitive damages.

## C. Reinstatement

■ Farmer Bros. contends that the district court erred in ordering that Estrada be reinstated without first considering Farmer Bros.'s objections to her reinstatement. For the first time on appeal, Farmer Bros. argues that the district court should have considered Farmer Bros.'s evidence regarding: (1) after-acquired evidence of Estrada's alleged application fraud; (2) the effect of Estrada's reinstatement on Farmer Bros.'s current employees; and (3) evidence of hostility between Farmer Bros. and Estrada. Estrada, however, contends that Farmer Bros. waived its right to contest the reinstatement when it failed to challenge the district court's order to reinstate Estrada. We have already discussed the first argument in Section IV, *supra*. The conclusions we expressed there are applicable here as well.

On March 10, 1992, at the end of the liability phase of the trial, the court issued its findings of fact and conclusions of law. In the section entitled "Damages and Other Relief," the district court stated that "Estrada is entitled to immediate reinstatement as a machine operator with full seniority back to the date she was hired in 1980." [ER:299]. This was *not* a final order. On April 1, 1992, the district court adopted Farmer Bros.'s proposed order, ruling that the court's order, dated March 10, 1992, was not final and that the judgment would not become final until after the damages phase of the trial, and that Farmer Bros. would not "be required to reinstate Estrada until after [completion of] the damages phase ... at which time the court [would] stay Estrada's reinstatement until after any right of appeal is exhausted." [Id.] On April 27, 1992, pursuant to the court's order, both parties submitted memoranda of points and authorities regarding the damages issues. In its preliminary statement, Farmer Bros. stated that the legal memorandum would set forth Farmer Bros.'s position regarding *all* remaining damage issues. In its memorandum, Farmer Bros. argued, among other things, that unless Estrada could show that she was physically capable of performing the duties of a machine operator, she should not be reinstated.

On August 14, 1992, however, Farmer Bros. withdrew, on its own motion, its "defense that Estrada is or was at any time ... physically incapable of performing the job functions of the machine operator position at Farmer Bros.," and, thus, it withdrew its only objection to reinstatement. At no time during the damages phase of the trial did Farmer Bros. raise the issue of Estrada's reinstatement or discuss any of the objections to reinstatement which Farmer Bros. raises in this appeal. Moreover, Farmer Bros.'s motion opposing the judgment, filed after the court reached its decision as to damages, failed to raise the issue of reinstatement. The record thus reveals that Farmer Bros. had several opportunities to challenge Estrada's reinstatement but failed to do so.

Finally, there is no evidence to support Farmer Bros.'s contention that it would have been futile for Farmer Bros. to challenge the district court's determination that Estrada was entitled to reinstatement. On the contrary, Farmer Bros. did challenge Estrada's reinstatement initially, but then withdrew the objection before the district court had an opportunity to rule on it. If Farmer Bros. initially did not think it futile to challenge reinstatement on the ground that Estrada was incapable of performing the work, it is hard to believe that Farmer Bros. thought of the grounds it now raises on appeal but declined to pursue them out of a conviction that it would be futile to do so. Therefore, we deem the issue waived.

## VI. *Estrada's Cross Appeal*

On cross appeal, Estrada contends that the district court erroneously granted partial summary judgment in favor of Farmer Bros. on the issue of whether Estrada failed to mitigate her damages after September 1985.[10]

---

10. Estrada also argues that the district court should not have considered Farmer Bros.'s supplemental evidence because it was untimely filed under F.R.Civ.P. 56(e). Because we affirm the district court's grant of partial summary judgment on the basis of the evidence that Estrada concedes was properly submitted, we need not reach this issue.

We review *de novo* the district court's grant of summary judgment. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985). We affirm the district court's ruling "only if the record, read in the light most favorable to the non-moving party, establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

To prevail on its motion for summary judgment, Farmer Bros. had to prove that, based on undisputed facts in the record, during the time in question there were substantially equivalent jobs available, which Estrada could have obtained, *and* that she failed to use reasonable diligence in seeking one. *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir.1978). We hold that the undisputed evidence in the record supports the district court's conclusion that Farmer Bros. met its burden of proving that, after 1985, Estrada failed to mitigate her damages.

(1) Substantially Equivalent Jobs Available

The record reveals that Farmer Bros. demonstrated that there were comparable jobs available between 1985 and 1990. Two of the women who had been laid off at the same time as Estrada had been able to find substantially equivalent employment. Farmer Bros. also submitted reliable data, based upon a random statistical sample of 148 companies located near Estrada's residence, showing that substantially equivalent jobs were widely available from 1982 to 1990. Estrada's evidence to the contrary was weak and failed to raise a material issue of fact.

(2) Reasonable Diligence in Seeking Employment

It is undisputed that, after September 1985, Estrada's job search came to an end. Although in some circumstances it may be reasonable for a plaintiff to stop searching for alternative employment, the record reveals that Estrada's decision was not justified. Farmer Bros. demonstrated that, had Estrada continued searching for a job, her search would not have been hopeless. Moreover, Estrada did not decide to stop her job search to do something else that would later enable her to find employment. Therefore, the situation here is distinguishable from all the cases in which a plaintiff's decision to end the search for substantially equivalent employment was found to be reasonable. *See, e.g., Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1471 (11th Cir.1985) (holding that it was reasonable for the plaintiff to stop a hopeless job search and help her spouse to set up his business which, in the future, would have provided her with gainful employment); *see also Brady v. Thurston Motor Lines*, 753 F.2d 1269 (4th Cir.1985) (plaintiff acted reasonably by accepting lesser employment and attending school); *J.H. Rutter Rex Mfg. Co. v. NLRB*, 473 F.2d 223, 242 (5th Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973) (holding that plaintiff who accepted a lower paying job because it was the best job available had mitigated damages). Thus, we cannot say that by completely abandoning her search Estrada has done "all that could be reasonably expected [of her] by way of mitigation." *Id.* at 242.

Accordingly, we affirm the district court's grant of partial summary judgment in favor of Farmer Bros.

*CONCLUSION*

The district court properly found that Farmer Bros.'s employment decisions were designed to eliminate women from its production plant workforce. However elaborate its scheme to maintain the appearance of gender neutrality, Farmer Bros. cannot escape liability under Title VII and the FEHA. Title VII and the FEHA require this court to ensure more than the mere appearance of equality.

Accordingly, we affirm the judgment of the district court, with the exception of the calculation of Estrada's lost health and life insurance benefits, which we reverse and remand for further proceedings. Costs awarded to Estrada.

AFFIRMED IN PART and REVERSED and REMANDED IN PART.

BRUNETTI, Circuit Judge, concurring:

I concur in the opinion except for the merits discussion of the after-acquired evidence defense and *Massey v. Trump's Castle Hotel and Casino*, 828 F.Supp. 314 (D.N.J. 1993), contained in Part IV.

I agree with the conclusion that we should not reach the after-acquired evidence defense because Farmer Bros. failed to properly raise the defense. After clearly declining to reach this issue, however, the opinion engages in a limited merits discussion, expressing agreement with *Massey's* reasoning on the important question of the effect of after-acquired evidence on an employee's right to reinstatement and front pay. This discussion is dicta, and this is not the case to attempt to address and adopt such a significant and complex doctrine in such a cursory manner. Accordingly, I cannot join in that merits discussion.